SMITH, Presiding Justice, for the Court:
Nathan Bourn appeals from a decree of the Chancery Court of Forrest County denying his suit to establish a resulting trust in a forty acre tract of land in that county, and confirming title to the tract in Arlena Bourn.
Suit was begun by Nathan Bourn against Arlena Bourn, his sworn bill claiming title to the land by adverse possession, the land having been part of a tract of land conveyed to B. F. Bourn, husband of Arlena Bourn, during his lifetime, by Federal Land Bank of New Orleans, and of which B. F. Bourn had died seized and possessed.
Arlena Bourn answered, denying the allegations relied upon by Nathan Bourn to establish title in him by adverse possession, and denying that he owned any interest in the land. She filed a cross-bill with her answer setting up her title to the land by descent from her late intestate husband, B. F. Bourn, the interests inherited by B. F. Bourn’s other heirs, their children, having been conveyed to her after Bourn’s death.
Following the filing of the answer and cross-bill by Arlena Bourn, Nathan Bourn filed an amended bill, predicated upon a different theory, claiming to be entitled to recover the land under an alleged oral trust. To this amended bill an amended answer was filed by Arlena Bourn, in which she denied its material allegations.
When the case was tried, Nathan Bourn offered himself as a witness in his own behalf for the purpose of establishing an alleged oral agreement which he claimed to have made with his brother, B. F. Bourn, deceased, in 1937 or 1938. The agreement, it was alleged, provided that the forty acre tract in question would be conveyed to Nathan Bourn when Nathan Bourn had paid B. F. Bourn one-half of the purchase price of the eighty acre tract, alleged to have been either $1,200 or $1,400.
An objection was made to the testimony of Nathan Bourn upon the ground that it was offered to establish his own claim against the estate of the deceased B. F. Bourn which had originated during the lifetime of the decedent. Mississippi Code Annotated section 13-1-7 (1972), known as the “Dead Man’s Statute.” The chancellor sustained the objection and his action in doing so is assigned as error.
Among cases reviewed in considering this assignment we have noted particularly the cases of Shepherd v. Johnston, 201 Miss. 99, 28 So.2d 661 (1947), (said by appellant to be controlling here), and Coleman v. Kierbow, 212 Miss. 541, 54 So.2d 915 (1951).
An examination of the facts in these cases discloses however, that neither is applicable here, as neither involved a claim against the estate of a dead person which originated during the lifetime of such person.
In Shepherd, Mr. and Mrs. Shepherd had borrowed from Dr. Johnston money neces *423 sary to purchase a tract of land, doing so under an alleged oral agreement “whereby Dr. Johnston was to advance the amount necessary to handle the transaction, and they were each to acquire a one-half undivided interest therein.” The agreement was said to provide that the conveyance from the seller should be made to Dr. Johnston’s wife, Mrs. Mattie H. Johnston, title to be held in trust by her as security for the Shepherd’s loan until the Shepherds satisfied their obligation, at which time one-half interest in the land would be conveyed to the Shepherds. There was no writing evidencing an agreement.
The Shepherds paid their debt, Dr. Johnston died, but Mrs. Johnston, to whom the land had been conveyed and in whom title was vested, declined to convey to the Shepherds. The Shepherds sued Mrs. Johnston to establish a resulting trust. At the trial, testimony of the Shepherds as to the oral agreement was objected to under the provisions of the “Dead Man’s Statute” and the objection was sustained by the chancellor. This Court reversed, saying:
Neither the estate of Dr. Johnston nor any of his heirs at law, other than his wife, were parties to this suit. They could not, therefore, be bound by any decree that may have been predicated upon this testimony in the present suit. . (201 Miss. at 105, 28 So.2d at 663).
And further:
Therefore, as between the complainants and the said defendant, their testimony would tend to establish an equitable interest in a one-half undivided interest in the land in favor of the estate of Dr. Johnston, rather than to defeat the right of the estate thereto. That is to say, the result of excluding this testimony would be to uphold the claim of the defendant as owner of the fee-simple title to all of the land in her own right. (201 Miss. at 105, 28 So.2d at 663).
Obviously, in Shepherd, the suit was against a living person, Mrs. Johnston, in whom title to the land was vested, and was directed toward recovering from her an undivided one-half interest in the property which had been conveyed to her by a third-person former owner. This was not a claim against the estate of the decedent, Dr. Johnston, in whom title had never been vested, and the statute did not apply.
The other case, Coleman v. Kierbow, supra, also involved a transfer of land inter vivos, whereby Mrs. Herren conveyed certain land to one of her children, Mrs. Kier-bow, to the exclusion of her other four children. The four excluded children brought suit against Mrs. Kierbow to establish a constructive trust in the land.
The suit, this Court said, divided itself into two parts: (1) The allegation that the deed from Mrs. Herren to Mrs. Kierbow was null and void, and (2) the charge that the grantee, Mrs. Kierbow, held the land subject to a constructive trust under an oral agreement which she had made to convey equal shares to complainants after the death of their mother, Mrs. Herren.
The complainants attempted to testify, in support of Part (1) (that the deed from Mrs. Herren to Mrs. Kierbow was null and void), and an objection was interposed by the defendant and sustained by the chancellor under the Dead Man’s Statute. This Court upheld the action of the chancellor in so ruling.
Under Point (2) the chancellor ruled that the Dead Man’s Statute applied and was reversed on appeal here. This Court said:
To establish the trust, it was necessary to recognize that the deed (inter vivos from Mrs. Herren to Mrs. Kierbow) vested title in the grantee (Mrs. Kierbow). That means title was out of the estate. [T]he only question being whether the grantee (Mrs. Kierbow, a living person) held the title for herself alone or for herself and the complainants.
(212 Miss. at 554, 54 So.2d at 920).
The Court concluded: “The estate is not involved. Complainants are asserting no claim against the estate of Mrs. Herren.”
Mrs. Kierbow, a living person, was the defendant, and it was she who would suffer *424 the loss if complainants were successful in prosecuting their suit.
In the case now before us, B. F. Bourn acquired title to this land in 1938, as part of a tract of eighty acres conveyed to him by Federal Land Bank, and title was vested exclusively in him at his death. At his death, the land was part of his estate. The alleged trust came about, according to the amended bill, by virtue of an oral agreement made by Nathan Bourn with B. F. Bourn in 1937 or 1938. This suit, not filed until after B. F. Bourn was dead, if successful, would deplete his estate by taking away from it forty acres of land, the suit being based upon an alleged oral agreement made with the deceased in 1937 or 1938.
In Jacks v. Bridewell, 51 Miss. 881 (1876), the Court said:
The term “estate of a deceased person” is used, in its broad and popular sense, to signify all the property of every kind which one leaves at his death. Therefore, any “right” asserted against real or personal property left by a deceased person, as accrued to the party by virtue of a dealing between him and such person since deceased, renders the person asserting it incompetent as a witness to maintain in his own behalf such assertion of right.
(51 Miss. at 888).
In Jackson v. Smith, 68 Miss. 53, 8 So. 258 (1890), clarification of what is meant by “estate” is found:
The exclusion (under the Dead Man’s Statute) is not confined to cases in which the controversy is between him who would testify to his claim or .right, and the administrator or executor of the deceased person, but it extends to every assertion of such right by a party to any part of the estate left by a deceased person, and claimed by such party . by reason of an alleged transaction between such party and the deceased person.
(68 Miss. at 54, 8 So. at 258).
In Poole v. McCarty, 240 Miss. 341, 347, 127 So.2d 398, 401 (1968), this Court stated the purpose of the statute:
The surviving party should not have the benefit of his own testimony where the adversary’s lips are closed by death.
The chancellor correctly applied the statute in refusing to allow Nathan Bourn to testify.
The next proposition assigned by appellant as ground for reversal is to the effect that the decree was against the weight of the evidence and it was error to dismiss appellant’s bill.
In Dalsoren v. Olsen, 247 Miss. 778, 157 So.2d 60 (1963) this Court held:
The record title owner of real estate is presumed to be the legal and equitable owner of the same. Jordan v. Jordan, 145 Miss. 779, 111 So. 102; Jones v. Jones, 226 Miss. 378, 84 So.2d 414; and 59 C.J.S. Mortgages, § 48a, p. 82. See also Conner v. Conner, 238 Miss. 471, 119 So.2d 240. These authorities sustain the view that the burden of proof is upon the person claiming the benefit of a resulting trust to prove by clear, strong, unequivocal and unmistakable evidence that the alleged beneficiary of the trust has paid for the property beyond any reasonable doubt. (247 Miss. at 783, 157 So.2d at 62).
In 1978, In Matter of Estate of Evans, 359 So.2d 1381 (Miss.1978), this Court again stated the rule regarding the burden of proof which rests upon one who claims under an alleged resulting trust. The Court said that in order to establish such a claim that the evidence must be “clear, unequivocal, convincing and beyond a reasonable doubt.” Conner v. Conner, 238 Miss. 471, 119 So.2d 240 (1960); Stovall v. Stovall, 218 Miss. 364, 67 So.2d 391 (1953); Jordan v. Jordan, 145 Miss. 779, 111 So. 102 (1927); Moore v. Crump, 84 Miss. 612, 37 So. 109 (1904); Logan v. Johnson, 72 Miss. 185, 16 So. 231 (1894).
In passing upon the sufficiency of the evidence offered by complainant-appellant to meet the burden of proof which rested upon him, the chancellor was justified in considering all of the circumstances of the case. These included the intrinsic improba *425 bility of the beneficiary under the alleged trust agreement waiting approximately forty years and until after the other party had died before asserting his claim, inconsistencies, vagueness and contradictions as to the terms of the alleged oral agreement, the assertion that Nathan Bourn was to pay one-half of the $1,200 or $1,400 paid by B. F. Bourn to the Federal Land Bank for the eighty acre tract compared with his claim that he had, in fact, paid $2,350 without demanding a conveyance from B. F. Bourn, the complete absence of any receipt or can-celled check for any of the some forty-odd payments claimed to have been made to B. F. Bourn, and the change of positions by Nathan Bourn from that taken in the original bill to that taken in the amended bill. The evidence tending to establish Nathan Bourn’s claim of a resulting trust was not “clear, unequivocal, convincing or beyond a reasonable doubt.”
On the other hand, B. F. Bourn’s ownership of the land is supported by the deed to him from Federal Land Bank conveying the complete fee simple title, as well as by payment by him of all the taxes on that land over the entire period, mortgaging the land to Federal Land Bank by B. F. Bourn to secure payment of the purchase price, the payments having been made by B. F. Bourn, coupled with B. F. Bourn’s some forty-odd years of undisturbed possession and control of the land.
In Eddy v. Clayton, 44 So.2d 395 (Miss.1950), the issue before the Court was whether a claimant had occupied land adversely or by permission of the record title holder. In disposing of the question the Court noted that the assertion of adverse possession by the claimant was not supported by a deed or any color of title but rested solely upon an alleged oral agreement or promise. The chancellor found against the claimant. This Court affirmed, saying:
The issue thus raised was whether the use by Eddy was in its inception permissive and so continued. The prima facie case made by the complainant was sufficiently met by the defendant so as to make an issue of fact and we are not willing to reverse the finding of the chancellor.
(44 So.2d at 397).
This Court repeatedly has held that a decision by a chancellor of a factual matter in a case before him will not be disturbed on appeal unless it is manifestly wrong, if there is credible evidence to support it. The decree dismissing the amended bill and sustaining the cross-bill was not against the weight of the evidence but was supported by the evidence. There is no merit in appellant’s second proposition.
Both propositions assigned by appellant for reversal being without merit, the decree appealed from is affirmed.
AFFIRMED.
PATTERSON, C. J., ROBERTSON, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.